Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA for the use and benefit of NOUVEAU ELEVATOR INDUSTRIES, LLC,<br><br>     Plaintiff,<br><br>     v.<br><br>VALIANT GROUP, LLC. and COLONIAL SURETY COMPANY,<br><br>     Defendants. | Civil Action No. 23-22423 (ES) (MAH)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

Plaintiff United States of America for the use and benefit of Nouveau Elevator Industries, LLC, (hereinafter, "Plaintiff" or "Nouveau Elevator") filed suit against Defendants Valiant Group, LLC ("Valiant Group") and Colonial Surety Company ("Colonial Surety") (together, "Defendants") bringing claims for (i) Breach of Contract; (ii) Unjust Enrichment; and (iii) Breach of Payment Bond under 40 U.S.C. § 3131, *et seq*. (D.E. No. 1 ("Complaint" or "Compl.") ¶¶ 22–40). Before the Court is Defendant Valiant Group's motion to dismiss the Complaint. (D.E. No. 14 ("Motion")). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, Valiant Group's Motion is **DENIED**.

**I. BACKGROUND**

 **A. Factual Allegations**

According to the Complaint, Plaintiff is a limited liability company specializing in elevator maintenance and repairs, "full installations, replacements, state of the art modernizations, and code

1

compliance, among other things." (Compl. ¶ 1).  Defendant Valiant Group is a company engaged in the business of providing general construction services, for, *inter alia*, federally-funded projects. (*Id.* ¶ 2).  Defendant Colonial Surety "is authorized to issue suretyship bonds in connection with federal and state construction projects." (*Id.* ¶ 3).

Plaintiff alleges that on April 16, 2020, the United States Department of Veterans Affairs accepted Valiant Group's proposal in the amount of $4,970,599.90 to upgrade the elevators in the Veterans Affairs Campus located at 385 Tremont Avenue, East Orange, New Jersey (hereinafter "the Project").  (*Id.* ¶ 7).  According to the Complaint, Valiant Group was to complete the scope of work for the Project by July 9, 2021.  (*Id.* ¶ 9).  Defendant Colonial Surety issued a payment bond "in favor of Valiant Group, as principal, and the Government for the United States of America, Department of Veterans Affairs, as obligee, for the project, in the amount of $4,970,599.90" (hereinafter, the "Payment Bond").  (*Id.* ¶ 10).

According to the Complaint, on May 22, 2020, Valiant Group and Plaintiff entered into a Standard Subcontract Agreement (hereinafter, "Subcontract") wherein Plaintiff agreed to perform certain work on the Project in exchange for payments totaling $4,350,000.00.  (*Id.* ¶ 11).  As set forth in the Subcontract, the work Plaintiff was to furnish for the Project included all elevator associated work such as, among other things, upgrading elevators, performing associated engineering, cladding and refurbishing stainless steel, performing elevator maintenance and refurbishment, removing various specified equipment, replacing cab interiors, and adding new load weighting devices.  (*Id.* ¶ 12 (citing D.E. No.1-2, Ex. B. to Compl. ¶ 5)).[1]  Plaintiff alleges that Valiant Group subsequently provided a Change Order deducting $43,871.72 from the

---

[1]   The Court may consider the Subcontract for purposes of the present motion because that document was submitted with the Complaint and is explicitly relied upon and integral to the Complaint.  (*See* Compl. ¶ 11 ("A true and correct copy of the Subcontract is attached hereto as Exhibit B and incorporated herein by reference.")); *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

Subcontract amount, resulting in a new Subcontract amount of $4,306,128.28. (*Id.* ¶ 13). Further, according to the Complaint, during the course of performance of Plaintiff's work on the Project—which commenced on or about December 2021—a series of changes were required as to the scope of work, which Plaintiff documented in Change Orders to Valiant Group totaling an amount of $61,855.07. (*Id.* ¶ 14). As such, based on the deductions and Change Orders, Plaintiff alleges it was thereafter owed $4,306,128.28 under the Subcontract, plus $61,855.07 in Change Orders. (*Id.* ¶¶ 13–17).

Plaintiff alleges that it completed all work it was obligated to perform under the Subcontract on February 14, 2023 and that "[a]ll of the labor, equipment, materials, engineering, and supplies were furnished by Nouveau Elevator on the Project in accordance with the Subcontract."[2] (*Id.* ¶¶ 15–16). Nevertheless, despite its completion of its work under the Subcontract, Plaintiff claims it was only paid $3,816,226.27 of the $4,306,128.28 total amount due under the Subcontract by Valiant Group. (*Id.* ¶ 16). Accordingly, Plaintiff alleges that Valiant Group still owes it a payment amount of $489,902.01 under the Subcontract, plus $61,855.07 in Change Orders, for a total amount of $551,757.08. (*Id.* ¶ 17). Plaintiff further alleges that even though Valiant Group has attempted to excuse its failure to timely pay Plaintiff based on delays to the completion of the Project, any delays "were caused by the actions of Valiant Group and/or third-parties over which Plaintiff has no control." (*Id.* ¶ 21).

Despite the fact that Plaintiff "performed all of the terms and conditions of the Subcontract," Plaintiff alleges that Valiant Group breached the Subcontract by failing to timely pay Plaintiff for its services and materials and "improperly attempting to assert setoffs based on

---

[2] Plaintiff clarifies that it completed the scope of its performance "except for the maintenance/warranty and training period set forth therein." (Compl. ¶ 16).

delays falsely alleged to be caused by [Plaintiff]." (*Id.* ¶¶ 23–24). Further, Plaintiff alleges that "Valiant Group has been unjustly enriched by receiving the benefit of the services and materials provided by [Plaintiff] without paying the reasonable value for said services and materials." (*Id.* ¶ 31). Lastly, because Colonial Surety issued a Payment Bond for the Project, Plaintiff alleges that "Valiant Group, as principal, and Colonial Surety, as surety, are liable, jointly and severally, under the Payment Bond to pay [Plaintiff] the balance owed for its unpaid labor, equipment, materials, and/or services provided to the Project." (*Id.* ¶ 38).

### B.     Procedural History

Plaintiff initiated this action on November 16, 2023, asserting claims for (i) Breach of Contract against Valiant Group (Count I); (ii) Unjust Enrichment against Valiant Group (Count II); and (iii) Breach of Payment Bond under 40 U.S.C. § 3131, *et seq*. against both Valiant Group and Colonial Surety (Count III). (*Id.* ¶¶ 22–40). On January 2, 2024, Valiant Group filed a motion to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6). (D.E. No. 14-1 ("Mov. Br.")). The Motion is fully briefed. (D.E. No. 22 ("Opp. Br."); D.E. No. 29 ("Reply")).

## II.    LEGAL STANDARDS

### A.     Rule 12(b)(5)

A plaintiff must serve his summons and complaint on each defendant within 90 days of filing the complaint or the matter is subject to dismissal. Fed. R. Civ. P. 4(m). Federal Rule of Civil Procedure 12(b)(5) permits a court to dismiss a complaint for insufficient service of process. Fed. R. Civ. P. 12(b)(5). The party effecting service has the burden of establishing that service was sufficient. *Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir. 1993).

4

Before a court dismisses a case for insufficient service of process, it must determine whether there was good cause for a plaintiff's failure to effect timely service. *Petrucelli v. Bohringer & Ratzinger, GMBH*, 46 F.3d 1298, 1305 (3d Cir. 1995). A plaintiff has the burden to establish good cause. *Mason v. Therics, Inc.*, No. 08-2404, 2009 WL 44743, at *2 (D.N.J. Jan. 6, 2009). "'[G]ood cause' has been defined as being tantamount to 'excusable neglect,' under Federal Rule of Civil Procedure 6(b)(2), which requires 'a demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rules.'" *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 610 (D.N.J. 2002) (quoting *MCI Telecomm. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995)). If a plaintiff can demonstrate that good cause exists, "the district court must extend the time for service." *Petrucelli*, 46 F.3d at 1305. If, however, good cause does not exist, "the court may in its discretion decide whether to dismiss the case without prejudice or extend time for service." *Id*. To that end, courts have "broad discretion" in deciding a motion to dismiss pursuant to Rule 12(b)(5). *Hoist v. New Jersey*, No. 12-5370, 2013 WL 5467313, at *3 (D.N.J. Sept. 30, 2013).

**B.     Rule 12(b)(6)**

In assessing whether a complaint states a cause of action sufficient to survive dismissal under Rule 12(b)(6), the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). "[T]hreadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded. *Id*. at 878–79 (internal quotation marks omitted) (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and a claim is facially plausible when the plaintiff "pleads

5

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (internal quotation marks omitted) (first quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

While the Court generally "may not consider matters extraneous to the pleadings" when deciding a Rule 12(b)(6) motion, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), an exception to this general rule provides that the Court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (noting that, pursuant to Rule 12(b)(6), the Court "may consider documents that are attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case'") (first citing *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); and then quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004)). Thus, "a court may consider 'an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" *Fuller v. Rozlin Fin. Grp., Inc.*, No. 19-20608, 2020 WL 5036215, at *2 (D.N.J. Aug. 26, 2020) (quoting *Clemons v. Midland Credit Mgmt., Inc.*, No. 18-16883, 2019 WL 3336421, at *2 (D.N.J. July 25, 2019)).

### C. Rule 9(c)

Federal Rule of Civil Procedure 9(c) addresses the pleading requirements for conditions precedent. Rule 9(c) provides that "[i]n pleading conditions precedent, it suffices to allege

6

generally that all conditions precedent have occurred or been performed," though denying the occurrence or performance of a condition precedent must be done with particularity. Fed. R. Civ. P. 9(c). Pleading the satisfaction of conditions precedent need not meet the plausibility standard. *Hildebrand v. Allegheny Cnty.*, 757 F.3d 99, 112 (3d Cir. 2014).

### III.    DISCUSSION

#### A.    Service of Process

In its moving brief, Valiant Group moved to dismiss Plaintiff's Complaint for improper service of process under Federal Rule of Civil Procedure Rule 12(b)(5). (Mov. Br. at 2–6). Valiant Group pointed out that the affidavit of service of the Summons and Complaint on Valiant Group indicated that service was made on an individual named Kimberly Zickefoose—the spouse of Brian Zickefoose, President and CEO of Valiant Group—at 633 Springton Way, Lancaster, PA. (*Id.* at 4–5). However, Valiant Group contends that Ms. Zickefoose "is neither an officer nor an agent authorized to accept service on behalf of Valiant [Group]." (*Id.*). Further, Valiant Group pointed out that the address at which Ms. Zickefoose was served was her home and not a "regular place of business or activity" of Valiant Group. (*Id.* at 5). As such, Valiant Group maintained that service in this manner was improper under the federal and state rules for service of process. (*Id.* at 5–6).

In Opposition, Plaintiff explained that rather than contesting the adequacy of service, Plaintiff elected to re-serve the Summons and Complaint on Valiant Group's New Jersey Agent. (Opp. Br. at 4). As such, it contended that any argument that Valiant Group was not properly served is now moot. (*Id.* at 5). In Reply, Valiant Group agreed that the Complaint has now been properly served and conceded that Valiant Group's motion to dismiss is now moot to the extent it was based upon improper service of process. (Reply at 1–3). Because Valiant Group concedes

that the Complaint has been properly served in this matter, the Court finds that Valiant Group's motion to dismiss is now moot to the extent it was based upon improper service of process. As such, the Court need not decide the sufficiency of Plaintiff's initial service of process.

### B. Compliance with Pleading Requirements

Valiant Group next argues that Plaintiff's claims for Breach of Contract (Count I) and Breach of Payment Bond (Count III) should be dismissed as insufficiently pled. (Mov. Br. at 6–9). Additionally, Valiant Group argues that to the extent Plaintiff attempts to make a claim under the Federal Prompt Payment Act ("FPPA[3]"), that statute does not provide a private right of action and thus cannot be the basis for a claim. (*Id.* at 8–9). The Court will address each of Valiant Group's arguments in turn.

#### i. Breach of Contract (Count I) and Breach of Payment Bond (Count III)

In Count I, Plaintiff brings a claim against Valiant Group for Breach of Contract, alleging that Valiant Group breached the Subcontract by failing to timely pay Plaintiff for its services and materials and "improperly attempting to assert setoffs based on delays falsely alleged to be caused by [Plaintiff]." (Compl. ¶¶ 23–24). In Count III, Plaintiff brings a claim against both Valiant Group and Colonial Surety for Breach of Payment Bond, alleging that "Valiant Group, as principal, and Colonial Surety, as surety, are liable, jointly and severally, under the Payment Bond to pay [Plaintiff] the balance owed for its unpaid labor, equipment, materials, and/or services provided to the Project." (*Id.* ¶ 38). Valiant Group argues that Plaintiff's Breach of Contract claim asserted in Count I should be dismissed because Plaintiff has failed to adequately plead satisfaction of

---

[3] The Court notes that Plaintiff has not asserted a claim under the FPPA under a distinct count, but rather only generally alleges, including in connection with its Breach of Contract claim, that pursuant to the FPPA, "Valiant Group was required to pay to Nouveau Elevator all monies received on the Project for work and services provided by Nouveau Elevator within seven days of receipt of same from the United States Department of Veterans Affairs" and claims that "Valiant Group's failure to timely pay amounts due under the Subcontract also constitutes a violation of the Federal Prompt Payment Act." (Compl. ¶¶ 18 & 25).

conditions precedent to recover under its Subcontract. (Mov. Br. at 7–8). More specifically, Valiant Group points out that the Subcontract contains several conditions precedent to payment including, among others, that (i) the "Subcontractor will not demand reconciliation and final payment until Contractor has received and finally approved . . . all certifications, all documentation and all support for such documentation required by Customer," (ii) there will be "[a]pproval by Customer and Contractor of all documentation and warranties required to be provided by Subcontractor," (iii) there will be "[f]inal acceptance of all work by the Customer," (iv) there will be "[r]eceipt of final payment from the Customer by Contractor," (v) the "Contractor may withhold payment pending proof satisfactory to all Contracting Parties of payment for labor, material, and services used" and (vi) the "Subcontractor shall furnish guarantees and all other documents required by the Prime Contract for the Subcontractor's work, as a condition precedent to payment." (*Id.* (citing D.E. No.1-2, Ex. B. to Compl.)). Valiant Group contends that Plaintiff has failed to plead that it has satisfied these conditions precedent, warranting the dismissal of its Breach of Contract claim as asserted in Count I. (*Id.* at 7–8). Likewise, Valiant Group contends that Plaintiff's Breach of Payment Bond claim asserted in Count III should be dismissed. (*Id.* at 9). Valiant Group points out that Plaintiff's Breach of Payment Bond claim depends upon Plaintiff demonstrating that payment is due under the underlying Subcontract. (*Id.*). As such, because Valiant Group maintains that Plaintiff has failed to plead facts sufficient to demonstrate that it is entitled to payment under the Subcontract, it claims Plaintiff's Breach of Payment Bond claim should be dismissed for the same reasons. (*Id.* at 6–9). In Opposition, Plaintiff contends that Federal Rule of Civil Procedure 9(c), which governs the standard for pleading the performance or occurrence of conditions precedent, only requires a plaintiff to generally aver that all conditions precedent have occurred or have been performed. (Opp. Br. 6). And it points out that it has more

9

than satisfied the general averment requirement set forth in Rule 9(c). (*Id.* at 7). As such, Plaintiff contends that its Breach of Contract claim asserted in Count I and Breach of Payment Bond claim asserted in Count III should not be dismissed. (*Id.* at 7–9). For the reasons set forth below, the Court agrees with Plaintiff.

"'A condition precedent is a fact or event occurring subsequently to the making of a valid contract and which must exist or occur before there is a right to immediate performance, before there is a breach of contract duty or before the usual judicial remedies are available.'" *Traisman v. Khmelnitsky*, No. 19-11045, 2020 WL 2847751, at *4 (D.N.J. June 1, 2020) (citation omitted). When a contract contains a condition precedent, and plaintiff has not alleged satisfaction of the condition, courts will dismiss the breach of contract claim for failure to state a claim. *Id.* at *5. Federal Rule of Civil Procedure 9(c) provides that: "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed." Fed. R. Civ. P. 9(c). The rule "only 'obliges the pleader to allege compliance with the contract or the performance of any relevant conditions or to state that the performance or occurrence of the conditions precedent was waived or excused,'" and is "designed, not to add to pleading burdens, but 'to eliminate the detailed and largely unnecessary averments that resulted under the common law procedure.'" *Traisman*, 2020 WL 2847751, at *4 (citation omitted). The Third Circuit has clarified that pleading the satisfaction of conditions precedent need not meet the plausibility standard. *Hildebrand*, 757 F.3d at 112 (stating that "[t]he pleading of conditions precedent is governed by Rule 9(c), not Rule 8(a)" and accordingly concluding that the pleading of conditions precedent falls outside the strictures of *Iqbal* and *Twombly*.).[4]

---

[4] Regardless of the substantive body of law that applies to the Subcontract's interpretation, the Federal Rules of Civil Procedure supply the relevant pleading standards. *Bank of Am., N.A. v. Westheimer*, 683 F. App'x 145, 148 n.9 (3d Cir. 2017) (stating that federal court sitting in diversity applies federal procedural law).

10

Here, the Court finds that Plaintiff has sufficiently alleged under Rule 9(c) completion of all conditions precedent to support its Breach of Contract claim asserted in Count I and Breach of Payment Bond claim asserted in Count III against Valiant Group. More specifically, in the Complaint, Plaintiff alleges that, "[Plaintiff] performed *all* of the terms and conditions of the Subcontract." (Compl. ¶ 23 (emphasis added)). It further emphasizes that "[d]espite [Plaintiff's] completion of its work under the subcontract on February 14, 2023 (except for the maintenance/warranty and training period set forth therein),[5] Valiant Group has only paid to Nouveau Elevator $3,816,226.27 of the $4,306,128.28 total amount due under the Subcontract." (*Id.* ¶ 16). In addition, Plaintiff provides that "[a]ll of the labor, equipment, materials, engineering, and supplies were furnished by [Plaintiff] on the Project in accordance with the Subcontract." (*Id.* ¶ 15). The Complaint further alleges in the context of Plaintiff's Breach of Payment Bond claim that "all conditions precedent to recovery on the Payment Bond have been satisfied." (*Id.* ¶ 39). Because Plaintiff has pled full compliance with the terms of the Subcontract, the Court finds that its allegations are sufficient to meet the general averment requirements of Rule 9(c).[6] *See Titan Stone, Tile & Masonry, Inc. v. Hunt Const. Grp., Inc.*, No. 05-3362, 2006 WL 2788369, at *6 (D.N.J. Sept. 27, 2006) (finding that complaint complied with Rule 9(c) pleading requirements where it alleged that "Titan has fully performed all of its obligations under the Subcontract," and

---

[5] There is nothing to suggest that Plaintiff's involvement in the maintenance/warranty and training period is a condition precedent to Plaintiff's payment under the Subcontract, particularly because, as stated above, Plaintiff alleges that, "Nouveau Elevator performed *all* of the terms and conditions of the Subcontract." (Compl. ¶ 23 (emphasis added)). Further, Defendant at no point argues that Plaintiff's involvement in the maintenance/warranty and training period is a condition precedent to Plaintiff's payment under the Subcontract. Thus, the Court finds no reason to believe the "maintenance/warranty and training period" was a condition precedent to payment.

[6] To the extent Valiant Group contests whether Plaintiff in fact completed all conditions precedent under the Subcontract, the Court finds that such an argument presents a factual dispute inappropriate for this stage of litigation. *See Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*, 210 F. Supp. 2d 552, 562 (D.N.J. 2002) (denying motion to dismiss based on finding that "defendant has generally averred that it has fulfilled this condition [precedent] in its answer and counterclaim," and that "[p]laintiff's blanket assertion that defendant has failed to satisfy this condition calls for consideration of facts extrinsic to the pleadings and therefore [is] beyond the scope of this Rule 12(b)(6) motion.").

"Titan has performed its obligations under the Subcontract and has not breached the covenants of good faith and fair dealing as they relate to the Subcontract"); *Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*, 210 F. Supp. 2d 552, 562 (D.N.J. 2002) (finding that complaint complied with Rule 9(c) where the defendant generally averred that it had fulfilled a condition precedent in its answer and counterclaim); *Gress v. Freedom Mortg. Corp.*, 386 F. Supp. 3d 455, 467 (M.D. Pa. 2019) (finding allegation that "[a]ll conditions precedent to all alleged claims for relief have occurred or been performed" sufficient to meet Rule 9(c)); *see also Hildebrand*, 757 F.3d at 111–12 (finding complaint alleging that "[a]ll conditions precedent to jurisdiction under section 706 of Title VII[] have occurred or been complied with" satisfied Rule 9(c) pleading requirement).[7]

Valiant Group's cited case law does not compel this Court to reach a contrary conclusion. In arguing that Plaintiff has failed to adequately allege satisfaction of conditions precedent, Valiant Group first cites to *Sundholm v. eSuites Hotels LLC*, No. 14-1996, 2014 WL 5449975, at *7 (D.N.J.

---

[7]  In Reply, Valiant Group attempts to distinguish *Titan Stone, Tile & Masonry, Inc. v. Hunt Const. Grp., Inc.*, No. 05-3362, 2006 WL 2788369, at *6 (D.N.J. Sept. 27, 2006) and *Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*, 210 F. Supp. 2d 552, 562 by asserting that those cases were decided prior to the Supreme Court's decisions in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), which dramatically changed federal pleading standards. (Reply at 4–5). However, in *Hildebrand v. Allegheny Cnty.*, 757 F.3d 99, 112 (3d Cir. 2014), the Third Circuit explicitly stated that "[t]he pleading of conditions precedent is governed by Rule 9(c), not Rule 8(a)" and accordingly concluded that the pleading of conditions precedent falls outside the strictures of *Iqbal* and *Twombly*. As such, this argument is without merit.

Valiant Group's remaining attempts to distinguish *Titan Stone, Tile & Masonry, Inc. v. Hunt Const. Grp., Inc.*, No. 05-3362, 2006 WL 2788369, at *6 and *Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*, 210 F. Supp. 2d 552, 562 are unavailing. (Reply at 3–4). To start, Valiant Group contends that *Titan Stone* is distinguishable because in that case the plaintiff pleaded that it performed its obligations, while here Plaintiff only vaguely pleads that it performed all terms and conditions of the Subcontract and does not specify that it performed its own obligations. (Reply at 3–4). The Court is not convinced. Based on the allegations recounted above which (i) provided that "[Plaintiff] performed *all* of the terms and conditions of the Subcontract"; (ii) specified that "[d]espite [Plaintiff's] *completion of its work under the subcontract* on February 14, 2023 (except for the maintenance/warranty and training period set forth therein), Valiant Group has only paid to Nouveau Elevator $3,816,226.27 of the $4,306,128.28 total amount due under the Subcontract"; and (iii) explained that "[a]ll of the labor, equipment, materials, engineering, and supplies were furnished by [Plaintiff] on the Project in accordance with the Subcontract," the Court can reasonably infer that Plaintiff performed its obligations under the Subcontract. (Compl. ¶¶ 15–16, 23 (emphasis added)). Further, though Defendant contends that *Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*, 210 F.Supp.2d 552, 562 is distinguishable because in that case the plaintiff generally averred that it satisfied conditions precedent (Reply at 4), here the Court finds that the allegations set forth above are sufficient to meet the general averment requirements of Rule 9(c).

12

Oct. 27, 2014). (Mov. Br. at 8). However, in *Sundholm* there was no indication that the operative complaint included any allegations that the conditions precedent of the promissory note at issue had been satisfied. *See Sundholm*, 2014 WL 5449975, at *7. In contrast, here, Plaintiff has enumerated a number of allegations in the Complaint to satisfy Rule 9(c), as set forth above. As such, the Court finds *Sundholm* distinguishable. Likewise distinguishable is the court's decision in *Traisman v. Khmelnitsky*, No. 19-11045, 2020 WL 2847751, at *5 (D.N.J. June 1, 2020). There, the plaintiff "[did] not contest that the Agreement imposed conditions precedent to his right to relief, or that that the complaint fail[ed] to plead compliance with them. He instead allege[d] that compliance should be excused or is futile." *Traisman*, 2020 WL 2847751, at *5. Such is not the case here. Accordingly, the Court finds that Plaintiff has satisfied the Rule 9(c) pleading requirement and therefore DENIES Valiant Group's motion to dismiss Plaintiff's Breach of Contract claim asserted in Count I and Breach of Payment Bond claim asserted in Count III on that basis.[8]

> ii. **Federal Prompt Payment Act**

Finally, Valiant Group moves to dismiss Plaintiff's complaint to the extent that it asserts a claim under the Federal Prompt Payment Act. (Mov. Br. at 8–9; Reply at 6). In the Complaint, Plaintiff alleges the following:

> Pursuant to 31 U.S.C. § 3901, *et seq.* (the "Federal Prompt Payment Act"), Valiant Group was required to pay to Nouveau Elevator all monies received on the Project for work and services provided by Nouveau Elevator within seven days of receipt of same from the United States Department of Veterans Affairs . . . Pursuant to the Federal Prompt Payment Act, Valiant Group's failure to pay Nouveau Elevator monies received on this Project for work performed or material supplied by Nouveau Elevator within seven days of receipt of same from the United States Department of Veterans Affairs subjects Valiant Group to liability to Nouveau

---

[8] Valiant Group offers no additional arguments for dismissal of the Breach of Payment Bond claim asserted in Count III; therefore, the Court will not dismiss Count III.

> Elevator in an amount of no less than the amount of money owed plus interest at the rate established by the Federal Prompt Payment Act.

(Compl. ¶¶ 18 & 20). Further, Plaintiff alleges that "Valiant Group's failure to timely pay amounts due under the Subcontract also constitutes a violation of the Federal Prompt Payment Act." (*Id.* ¶ 25). Recognizing that it well established that the Federal Prompt Payment Act does not create a private right of action, Plaintiff clarified in Opposition that it is not asserting a claim under the FPPA. (Opp. Br. at 9); *Anthony Allega Cement Contractor, Inc. v. Johnson Controls Fed. Sys./Versar, LLC*, No. 18-0875, 2019 WL 1792201, at *8 (D. Del. Apr. 24, 2019); *see also United States for Use & Benefit of Breaker Elec., Inc. v. Valiant Grp., LLC*, No. 23-16815, 2024 WL 1930175, at *2 (D.N.J. Apr. 30, 2024). Nevertheless, despite no private right of action being recognized under the statute, Plaintiff states that it may plead that Valiant Group is subject to and violated the Act and that such an allegation does not call for the dismissal of any claim or part thereof. (Opp. Br. at 9). In Reply, Valiant Group requests either that the Complaint be dismissed to the extent that it asserts a claim under the FPPA, or that the allegation in the Complaint referencing the FPPA be stricken. (Reply at 6). Because Plaintiff has conceded that it is not asserting a claim for a violation of the FPPA, the Court need not dismiss any such claim. *See Appleby v. Knauf Gips KG*, No. 22-61411, 2023 WL 3844770, at *3 (S.D. Fla. June 5, 2023) ("As is clear from the Amended Complaint—and confirmed in [p]laintiffs' Response—[p]laintiffs are not seeking redress for a private right of action arising under the CPSA, and therefore there is no claim to dismiss."). To the extent that Valiant Group requests to strike portions of the Complaint alleging that Valiant Group is subject to and violated the FPPA, the request is denied.

The authority to strike allegations stems from Federal Rule of Civil Procedure 12(f). Federal Rule of Civil Procedure 12(f) provides, "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ.

P. 12(f). "'The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters.'" *Natale v. Winthrop Res. Corp.*, No. 07-4686, 2008 WL 2758238, at *14 (E.D. Pa. July 9, 2008) (quoting *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F.Supp.2d 393 (E.D.Pa.2002)). "Relief under Rule 12(f) is generally disfavored and will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Goode v. LexisNexis Risk & Info. Analytics Grp.*, Inc., 284 F.R.D. 238, 243 (E.D. Pa. 2012) (internal quotation marks and citations omitted).

Here, recognizing that it well established that the FPPA does not create a private right of action, Plaintiff clarified in Opposition that it is not asserting a claim under the FPPA. (Opp. Br. at 9). Instead, it states that "[d]espite no private right of action being recognized to date, [Plaintiff] may plead that Valiant Group is subject to and violated the Act." (*Id.*). Considering that Plaintiff is not asserting a claim under the FPPA, the Court finds no reason to approve the request to strike. The FPPA was enacted "in an effort to provide the federal government with an incentive to pay government contractors on time by requiring agencies to pay penalties—in the form of interest—on certain overdue bills." *Anthony Allega Cement Contractor, Inc.*, 2019 WL 1792201, at *8 (quoting *U.S. ex rel. IES Commer., Inc. v. Continental Ins. Co., Inc.*, 814 F. Supp. 2d 1, 2 (D.D.C. 2011)). The FPPA was later amended to include provisions applicable to subcontractors. *See id.* Under the FPPA, prime contractors with the federal government are required to include "a payment clause which obligates the prime contractor to pay the subcontractor for satisfactory performance under its subcontract within 7 days out of such amounts as are paid to the prime contractor by the agency under such contract." *Id.* (quoting 31 U.S.C. § 3905(b)(1)). Nevertheless, the FPPA "does not grant subcontractors a separate cause of action, 'beyond common law breach of contract, for

15

violations of the required subcontract language.'" *Id.* (quoting *U.S. ex rel. Asphalt Contractors, & Site Work, Inc. v. KAR Contracting, LLC*, 2015 WL 3651279, at *5 (S.D. W. Va. June 11, 2015)). Here, though the FPPA does not grant Plaintiff a separate cause of action, Plaintiff's allegation that Valiant Group violated the act by failing to timely pay amounts due under the Subcontract is sufficiently related to the conduct that forms the basis of Plaintiff's claims against Valiant Group, including its Breach of Contract claim, Unjust Enrichment claim, and Breach of Payment Bond claims that all stem from Valiant Group's failure to pay Plaintiff outstanding amounts due under the Subcontract. And Valiant Group provides no argument to explain why the allegations relating to the FPPA have no possible relation to the controversy, why the allegations would cause prejudice to one of the parties, or why the allegations would confuse the issues in the case. (*See generally* Mov. Br. & Reply). Accordingly, even though the FPPA may not grant Plaintiff a separate cause of action, Plaintiff's allegations that Valiant Group violated the act still relate to this matter and as such striking those allegations is unwarranted. *See Appleby*, 2023 WL 3844770, at *3 (rejecting defendants request to strike allegations that defendants violated the Consumer Product Safety Act ("CPSA") even where the CPSA did not provide a private right of action because it was clear that those allegations related to the case); *see also Wilson v. King*, No. 06-2608, 2010 WL 678102, at *2 (E.D. Pa. Feb. 24, 2010) ("Though the decision to grant a motion to strike under Rule 12(f) is within the court's discretion, motions to strike are 'not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.'") (internal citations omitted).

## III. CONCLUSION

Based on the foregoing, Defendants' motion (D.E. No. 14) is **DENIED**. An appropriate Order follows.

Dated: September 30, 2024　　　　　　　　　　　　　　　　　*s/ Esther Salas*
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**Esther Salas, U.S.D.J.**